I want you to tell the court who you represent and approximately how long your argument will take. Good morning, counsel. Good morning, Your Honor. My name is Patrick Cassidy with the State File Defender. I represent the appellant, R.H. My argument will take about ten minutes with a couple minutes for rebuttal. That's very good, Mr. Cassidy. Good morning, counsel. Good morning, Your Honor. Assistant State's Attorney Annette Collins. For the people, I anticipate needing no more than about ten minutes. Very good. Thank you. Mr. Cassidy, you may proceed with your argument. May it please the court. Counsel, again, my name is Patrick Cassidy. I represent the respondent, R.H. Your Honor, this court should strike the condition of probation requiring the respondent to delete or remove all references to gangs, guns, or drugs from his social media because that condition violates the First Amendment. The probation condition restricts speech on an area where the U.S. Supreme Court recently said was one of the most important areas for free speech action, social media. The court said that recently in Packingham. And the restriction here is content-based. It does not prohibit posting on social media in general, but instead prohibits posts on certain topics, and specifically prohibits any references to gangs, guns, or drugs. Well, you didn't say posts. Your Honor. It said removal. I'm sorry. Deletion in the order. I'm saying it includes, then, putting some – he could – R.H. could take it all off. Under the order. And then he could put it all back on? Is that – would that violate the order or not? I think it will. If the order, you're correct, it says delete. But I think it's most reasonably read as also don't post anything in the future. And the reason not to post anything in the future is the order also improperly says that he can't have any contact with gangs, guns, and drugs. Is that correct? That is correct, Your Honor. And in the course of the probation conditions, there's a statute which would allow the judge to say, you're right, no contact with guns, drugs, and gangs, right? You're right. You're not – Correct. And that statute also says direct or indirect. Now, isn't this an indirect prohibition? Because when you talk about contact, there's many ways we contact people. One way is to telephone them. Another way is on social media today. So why under – it just makes sense that it's part of that continuance of what is appropriate under the statute. Well, it may be statutorily authorized under the indirect provision or under the other conditions provision. But that doesn't answer the question of whether it's improper under the First Amendment. Well, but if it's the First Amendment, you have no problem with the First Amendment saying you can't contact gangs. Well, this is a form of contact. I mean, when you post something on Facebook that's under a name that may only go to your friends that are fellow gang members, isn't that contact with gang members? So it's just – what's the difference? I don't see – you say First Amendment. But if it's okay not to contact, in person – no, if I write to First Amendment when it's not in person, apparently, is what you're saying. Is that what you're saying? No, no. I think I'm reading contact a little differently. This order, the order we're not challenging, says don't engage in gang activity or contact with gangs. It says contact. Yes, but I don't read that to mean communication via the Internet. Why not? Well, for one thing, this would be entirely superfluous, this order, if it did. Maybe it is. Maybe it is. Maybe it should be – well, maybe it's good he spelled it out in order for R.H. to understand what the judge is doing, since it says direct and indirect, because under today, young people communicate this way. This is a way – you know, for you, would you have seen it as a violation of the First Amendment for him not to telephone a gang member? I think that would be a violation of the First Amendment. I think – But he – so what – I don't understand contact. Maybe I'm confused. What's it mean, contact? Well, I think we have to read contact in the way the court was talking about, which is posting on social media. Well, but you say – I'm not saying it's okay. You just said contact's okay. The judge prepared the contact. Okay? I'm not – I'm not saying – let me be clear. I'm not saying it's okay. Or we're definitely reading contact differently. Well, how are you reading it? I'm trying to find out what – What I'm reading it as, don't post anything that shows you, with any other young men, that a probation officer might think, based on the color of their shirt, might be in contact with gang members. That's what we're concerned with here. That's what – Wait, wait, wait. Why shouldn't it – what's the difference between that and saying no contact with gang members, which you're not – Because the difference is, the order here, the word text, posting on social media. So why should that – I'm trying to find out. Why is that – That's the First Amendment. Well, but so is contact. Oh, okay. So you say that the First Amendment, it has a – about assemblage, right? A right to assembly. Isn't contact a right of assembly? But you're saying that part of the First Amendment's okay. But for some reason, this other part is not okay. I'm trying to – I am. I am. So there's many rights in the First Amendment. Right. We are making a free speech claim here. But you didn't make any – but you're saying that for some reason, the free speech claim is different than the assembly claim? Absolutely. Well, why one and not the other? I think it's not consistent, is it? There are different rights. They have different elements of the Amendment. But why – for a juvenile, if the judge – and we all are concerned about children – they're not allowed to be in gangs, right? They're not allowed to take drugs. And so you can – Correct. If he has contact with gangs, physical contact with gangs – Physical contact. Nobody said any more physical contact. Well, there has to be some – well, if it's – well, look – Well, what about text messaging? I mean, the judge said no contact. So in the real world, anybody who knows teenagers is going to say, okay, that's going to include emails, text messaging, phone calls, meeting on the street corner, meeting at school, probably, you know, six different ways that I can't even think of, and would also include social media – Facebook, Instagram, all those other things that they use regularly and are so annoying to adults. But how would that not just be contact? It's contact. It's a way of contacting. And I don't think that that's what we're challenging here. We're challenging in order to delete from social media all references to gangs. And I want you to say that. And I want you to say that it includes posting. He can't post. So – Right. Posting is different than text messages. It's different than Facebook messaging. How is it different? Your Honor, it's – How is it different? Well, I post lots of things on social media, and I don't think I've more than once in my life messaged a person through social media. But what time of day is it? You're a little older. No, I'm joking. But they're different things. But that's – what we're concerned here is he's been charged with some guilty with regard to drugs, gangs, and guns. So those are things that we want to protect him from. And we want to try to reform. And this may have a promising future. That's what the judge hopes. And he's trying to create that atmosphere. And if the judge says you can't have contact with gangs, guns, and drugs, but you can do You can't have contact with one of the social media. But he's not saying all social media. I mean, we're not down the Supreme Court case that you refer to, U.S. Supreme Court. What we're trying – he narrowed it, the judge narrowed it to only those things that he said the same thing with regard to the permitted direct or indirect in the statute regarding conditions. So, again, you know, you're bringing up this first amendment, but I don't see how you're differentiating it from the other ways that young people communicate. I guess maybe we are reading the order differently. I read this order as saying he can't reference, you know, drugs on social media. To me, that means he can't post a video of a music artist if there's any reference in that artist's video. Is that what – so is that – when the judge says he can't have contact with drugs, does that mean he can't listen to music? I'm not talking about on social media. Can he listen to music that has a song about drugs? Under the order that you don't – Yes, because he can't put it on, they can't post the video, right, I think. I mean, I guess maybe if this court reads this order as – I don't see how the order can be read any other way. You can't make a reference on social media to drugs, whether it be through a gang activity, which we agree is bad, or talking about political – you know, these are topics that are at the forefront of our conversations today, drugs, guns, can you talk – It seems you're debating what the order means. You didn't go in on a motion for clarification, did you? So they didn't know exactly what the judgment – The motion, I think, is clear. It deletes from any social media – But you're disagreeing about what contact means. That's a different part of the order. Here's my concern, counsel. There's a probation statute in the juvenile code, and it empowers the judge, as a condition of probation, to prevent an adjudicated juvenile from violating any criminal statute the juvenile is to refrain from possessing a firearm or dangerous weapon. He was convicted of that, correct? Yes, that's right. And it also says refrain from any contact directly or indirectly with certain specified persons or particular types of persons. So the judge was authorized to do precisely what he did by statute, right? Is that correct? The – And you don't challenge the statute? The statute does not specifically authorize the delete of social media. But why not? It says direct or indirect. That has to specify everything? No, the statute does have a catch-all. So I'm not arguing that – He's not sending his Facebook page out to himself. I mean, that's not what it's for. It's for other people to see it. But it's not contact with other people, Your Honor. It's not contact with other people? No. When they see that message, what would you call it? Yeah, what is it then? It's a public – I mean, if I publish – I publish an editorial in a newspaper, and a gang member reads it, I am not in contact. But he's not publishing it in a newspaper. We're talking about – Friends. This isn't out in the – I can't look at it. You can't look at the stuff that he's sending, right? I don't know. I have not tried, but it may be public. Well, it doesn't seem like – according to record, people who he knows were receiving these, they had a certain handle or name or – I think – Okay. I think – We're struggling with Facebook, maybe, what it is. But Facebook can be private or it can be public. That's correct. So the judge could say, look, for sure – I think it has to be public here. Otherwise, why would they access his Facebook? It doesn't have to be public. It can be private. Yes. But I think Mr. Respondent's Facebook must be public here. Not necessarily. Well, that's a different problem. Yeah, but they have to be just as dangerous. When we're talking about children. Sure. I'm sending a gang message out. His family's in trouble. Look, here's a child who said, I won't go to school because I'm afraid, right, of gangs. He said that. He's afraid of gangs. And if it's his family at risk – so he's sending out messages that could cause somebody to see it and it doesn't take much. Look, cross-site. And somebody could respond to that. And here's a judge saying, that's an indirect contact. And I can do direct or indirect contact. Couple with that, he's already been shot once, right? That's right. And we agree that there are pictures of him on his social media flashing gang signs with a gun and with drugs. And that's what prompted this order. Those were not communications. What are they? Here's what we disagree with. Was he sending them to his cell? I think so. Wait. That's a first. I mean, if I took a selfie and kept it in my phone and never showed it to anybody else, okay, maybe I could agree with that. Why anybody would do that, I have no clue. But that's not what this was. This was on Facebook. Exactly. And he has people that are able to access his Facebook page. Even one person. But apparently it was more than one person that was on his approved list of people to open his Facebook page. How is that not communicating? It's publishing. And we can't – it's different. How is it different? Communicating is – Facebook is very different than phoning someone up. How is that? Or sending a text message. How is that? Because it's an open form. A text message is open? No. Facebook is. Do you know how Facebook works? Okay. But that makes it more communicating then. If you're saying that Facebook is open and texting is not, then Facebook would be more communicating to anybody. And we're restricting it based on three topics. Correct. That he has a history of communicating to other people. And for which he has been found – the behavior he's been found guilty of, and he's admitted that he's afraid of. Okay. And the packingham involved a sex offender who was subject to sex offender registrations. We know how the liberty interest set can be deprived of sex offender registrations. He can't live a certain place. He can't go certain places. But the U.S. Supreme Court said that those liberty interests, maybe they can be curtailed. But the person that would write the free speech does not allow that person to be prohibited from being on Facebook. Well, we're not prohibiting him. There's nothing in that article that prohibits R.A. from being on Facebook. And you know that. That's worse, John. This is based on three topics. That's worse. Yes, John. The Supreme Court was much worse. You're saying this is worse? These are three topics? Instead of every topic? How can that be worse? So he takes a Thanksgiving picture with his family. No guns, no drugs, no gangs. He can do that. If a probation officer is confident that everyone in his family doesn't have any gang connections, what if the probation officer... Say he has Thanksgiving pictures with his grandma. Look, I don't understand how you think that this isn't communicating to people. Well, the Thanksgiving picture with his grandmother is not a communication to any gang members anymore than a picture of... That's correct. That's why he would be OK. That's why he can do that. We agree. Getting back to your... I would like to make clear why this is worse than what happened at Packingham. Packingham involved intermediate scrutiny, not strict scrutiny, for a reason. It wasn't as bad as this. These are restrictions based on topics. Topic restriction, the only Supreme Court said in minutes, is content-based discrimination. That triggers strict scrutiny. Here, you can't satisfy strict scrutiny, because these other orders that we haven't challenged serve the state's interests well in effectuating rehabilitation. Rehabilitation. Isn't that the most important thing we're thinking about here? This is a young man, right? That's right. 16. 16. Rehabilitation. Isn't that what we're talking about here? Don't we want to rehabilitate him? And you're saying it's OK. It's OK if he continues to send messages out about drugs. That's what you're saying. I'm not saying it's OK. You're saying that because you're saying it's unconstitutional. I didn't say that. It's unconstitutional. I'm sorry. But then you say, well, it's OK if it's not unconstitutional to be honest. He can't go on the street and walk up to a gang member, but he can go on Facebook and send a message to a gang member. That's OK. I just can't understand how that is rehabilitation, and that we as a state of Illinois, under the parent-patriarch doctrine, which is what we're talking about. We're not talking about adults here. We have responsibilities in this state for our children. And if we want our children to be rehabilitated, you can't have a halfway. And by bringing this case, what you're saying is somehow that the Constitution allows a youth who committed crimes and under a statute that permits direct and indirect prohibitions to allow a very dangerous conduct to continue just because it's in a media that's new. Can I just clarify this? I'm not saying it's OK for him to post these things. A probation officer, say he posts something in the future with drugs. That post can't be the trigger to violate his probation, but the probation officer can say, well, I'd better investigate the underlying conduct that is depicted in the post. And if, in fact, he was in possession of drugs, that could be a basis to bring him back in. This is a modest argument I think we're making. We're not saying it's OK to be in possession of drugs. We're saying that the posting on media can't be the trigger. But if the probation officer sees it, if it's public or if he otherwise has access, he can investigate that. There's no problem with that. Because we are challenging these other conditions. And because of those other conditions, we don't think this meets strict scrutiny. So, if Your Honors have no further questions. Thank you, Mr. Cassidy. Ms. Collins. Good morning, Your Honors. Assistant State's Attorney Annette Collins. There's a couple of points that I need to make about this particular probation condition, because it seems to be some confusion, at least in the briefs, about what the court is actually prohibiting. The court is not prohibiting, if we take a look at the entire context in the record in this case, the court is not prohibiting respondent from, in the future, posting statements that are against gangs or against drugs or against guns. This court was specifically concerned with the unique conditions and the unique circumstances of this respondent. Not only was he found guilty of possessing a large amount of cannabis with the intent to deliver, but he also had in his possession a firearm. And a social investigation prepared after adjudication in this case disclosed that this minor had deep roots with a particular gang faction. So much so that this gang faction, the unknown vice lords, the faction that respondent was part of, was called My Sean World, Money Team, My Sean World, Fifth Boys. Respondent's social media presence referenced this gang faction. And the Sean part of the gang name was due to Sean Dunning, one of respondent's close friends. You're talking in your brief, as Mr. Kessler pointed out in his brief, glorify. Are you saying that, they've never used the word glorify. The court did not. And you continually use this word glorify. I do. But it's not in the order. So I don't see where you're coming up with this. I'm looking at the photos that the court looked at. That's not a disruption of it. That glorify is an adjective that has nothing to do with the court's order. So when you're differentiating, so you say, even though the court order didn't say it, it's okay to end a post if it says, don't try drugs. I dare this is bad. That's not what I'm saying. What I'm saying is that, that is the respondent's means of attacking this probation condition as too broad. And that is a misrepresentation of the probation condition. So I'm trying to answer from you. Can you just tell me, what is the probation condition that is at issue? Delete from social media all references to guns, drugs, and gangs, and remove all references to guns, drugs, and gangs off of this minor's social media platforms. And in fact... Is that it? That's part of what the court said. The court also called these photographs, that were images that were posted on social media, called them disturbing. And they were disturbing because, Your Honor, they do glorify. But you just said what you say the order stated, which is different than what Mr. Cassidy said, because he said, it includes, you can't post anymore. It doesn't appear that that's what the court... So you're disagreeing? You mean it's okay then, under this order, it's okay for our agency to delete something and put it back up? No. Absolutely not. But you just said, post and delete. You said, delete and remove. Is there anything you're not posting? You're posting is included, but posting isn't included. I think what I'm trying to do is read everything that this court said, and did, in the most reasonable manner. And not myopically, by just looking at specific words. I'm trying to find out, maybe the order isn't, as Justice DeVille mentioned, maybe the order is just unclear. Because apparently, you don't agree with what the order stated. If you're saying, posting is included, you didn't mention that. Now you're saying, posting, you can't post. He shouldn't post. He should not post. He cannot post. What? Images. He can't post images. Images? Just images? No. I'm not done. He cannot post images, referencing, like the ones he has, and the court viewed, that are like these images that he's already posted, that references his gang life, his possession of guns, his use of narcotics. We have concrete examples in this record, of a respondent, a 16-year-old boy, doing exactly these things. I don't understand your argument. Because you keep talking in your brief about images. So words are not included. So he can say whatever he wants about gangs. No. You didn't say that. In your brief too, it talks about glorifying images. And you just said, it was the pictures, and it was disgusting. Are we talking about words here? Are we only talking about images? Or are we talking about both? We're talking about both. Okay. So now, that's a little difficult, what you've been arguing. So, I'm trying to figure out what this order's all about. Okay. I was getting there. You're right. I was. Alright. And I was starting with what we do know. The concrete facts in this case that the juvenile court judge was aware of. Because that's the starting point for how this juvenile court is going to fashion a unique set of conditions that are going to assist this minor in reaching rehabilitation and reform. And keeping him from self-harm. Because these kinds of images,       this minor's life. So, I'm trying to figure out what this order's all about. Okay. And I was getting there. You're right. I was getting there. So, the juvenile court judge was aware of  was going to assist this minor. Both in his safety and his future prospects. And I think he's... But this judge never said that. The judge never said any of the postings. So none of you are even posting them. He talked about images. And now you're saying words are out as well. I'm not sure the two of you even agree on what we're talking about here. Okay.  with you. How is our age going to be able to decide what he can and can't do? For example, can he put the picture of his grandmother at Thanksgiving? Or if there's a picture and a friend of his in the picture and he writes underneath you know it was a drug-free turkey? I mean what? Is that? I mean is that prohibited? That's fine. That's fine. That's fine. And I'm actually being as rational and reasonable as I can be in interpreting what the court did in this case. But we're talking about a child being an interpreter because he's constantly concerned about what's going to happen afterwards. And I understand that. Because are we opening? What doors are we opening such that probation he can get himself in trouble? Does he know where the parameters are? The question here is what are the parameters and is it so vague that he doesn't know what he's supposed to do? Absolutely not. This is not vague at all. In the context of what the circuit court judge the juvenile court judge was attempting to do was to remove from this juvenile's Facebook postings or Facebook or social media postings images that reference or anything that references games, drugs, and guns. We have the illustrative example of that in the various in the very postings that the court referred to. Okay. So the probation order says you can't violate any law. Right. Which possession of a gun would be a violation of the law. Drugs and gangs. You can't be in gangs. But the sentencing order also specifically says no gang contact or activity. So we go back to Justice Hyman's beginning questions which is what is contact? Does that mean, you know, walking up to somebody and saying hi? Does that mean phoning them? Does that mean texting them? Does that mean putting flashing gang signs on social media? Does that mean wearing gang colors at school? What is contact? And if it says no gang contact or activity very specifically checked off and then it also says delete from social media all references to gangs, guns, and drugs, I agree. I don't see that that's unclear. I think contact is any contact. I agree. When I used to write orders of protection, because people were often confused, I would say to them, that means no faxes, no e-mails, no birthday cards, no nothing. Maybe the judge could have done that better, but he checked specifically no gang contact or activity. Contact to me is very broad. I agree. And it's needed to be broad in a case where we're dealing with a juvenile delinquent who is a ward of the court. Because the court, this juvenile court is standing in the role of parents patria and no parent would ever want these kinds of postings, their child, to be exposing their child to these kinds of things. And that's a possibility. And that's unfortunately not a rare occasion. But she did tell the probation officer who did the investigation that she had hoped that this respondent would get on a better path, that she didn't like the negative influences in his life. I think that's clearly an indication that those negative influences are the very guns, drugs, and gangs that led him into the juvenile court. And he acknowledged that he was afraid to go to school. Absolutely. He'd been shot. He'd been shot five months, only five months after his very close friend was shot in a gang-related shooting. And respondent's mother told the police after respondent had been shot and treated at the hospital that he was not cooperative, he was not going to cooperate with the police. I think that a legitimate inference can be drawn from that, that that shooting was also gang related. He was on probation for a criminal offense when this event happened. Yes, he was. And in fact, one of the images that the court viewed in this case was not something that the respondent had posted in his own social media profile, but evidently was posted on another profile, another gang member's profile, and that was respondent stepping up to the bench in juvenile court with a bunch of emojis on the bottom sort of making light of this fact, sort of celebrating the fact that this juvenile was charged with a criminal offense in juvenile court. It is the entirety of these circumstances that are facing a juvenile court judge who needs, needs absolutely to ensure that these minors follow the conditions of probation and the statutory condition of probation, no guns, no drugs, no gang contact, it's easy to say that to a juvenile, but you have to provide the juveniles with the means to reach that goal, and one of the ways that this juvenile court judge took was to actually give specifics. Get off social media. Don't post images like this. That is a I didn't say cut off social media. No. I mean, get off social media with the gang references. You're right. This is not a bar on social media. So what is the, the test and scrutiny, is that correct? It's a little unclear, Your Honor. It does have to be one or the other. We actually argued in our brief that it could be intermediate scrutiny, but I understand that there are suggestions from the Illinois Supreme Court in J.W. that they use strict scrutiny for the banishment condition. So we also make the alternative argument that even if this court used strict scrutiny, even if this court feels that it's a content-based restriction, which in this case is a platform-based mode of communication restriction too, which is not always given the most heightened scrutiny, but let's assume it's considered content-based, we meet the compelling state interest to prove the constitutional merit of this probation condition. Just because there is a content-based restriction does not automatically mean that it is in all cases unconstitutional. Where there is a compelling state interest, which of course is the rehabilitation of this minor and the safety of this minor, we've all been aware, and the juvenile court judge more so than any of us, of Facebook wars that lead to and precipitate shootings. So we know that posting of these photos and the game report indicated that what the respondent was doing was throwing down game signs against the opposition rival gangs. The important issue is that you're saying that  there is a conflict between  order and the order that we're challenging here. The probation statute does provide any contact with certain specified persons or particular types of people   in this situation. So this court will strike the order we're asking to strike but make it clear that the words of this provision of probation statute are in effect. That is the purpose         order we're asking to strike but make it clear that the words of this provision of probation statute are in effect. That is    we're       the words of this provision of probation statute are in effect. That is the purpose order we're asking to strike but make it           That is the purpose order we're asking to strike but make it clear that the words of this provision of probation statute are in effect. That is the     to   make it clear that the words of this provision of probation statute are in effect. That is the purpose order we're asking to  but make it clear that     of probation statute are in effect. That is the purpose order we're asking to strike but make it clear that the words of this provision of     That is the purpose   asking to strike but make it clear that the words of this provision of probation statute are in effect. That is the purpose order      make it    this provision of probation statute are in effect. That is the purpose we're asking to strike but make it clear that the words of this  of probation statute are in    purpose    strike but make it clear that the words of this provision of probation statute are in effect. That is the purpose we're            probation statute are in effect. That is the purpose we're asking to strike but make it clear that the words of this provision